IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ELDON TUCK,<br><br>                    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER<br><br>1:14-cv-000150-EJF<br><br>Magistrate Judge Evelyn J. Furse |

      Mr. Tuck seeks review of the ALJ's denial of his claim for disability insurance benefits under Title II of the Social Security Act.  *See* 42 U.S.C. §§ 401–434.  Mr. Tuck alleged a disability period from March 30, 2009 to May 31, 2013.  (Admin. R. 11, certified copy tr. of R. of admin. proceedings:  Eldon A. Tuck (hereinafter "Tr. __"), ECF No. 12.)  The Administrative Law Judge ("ALJ") found Mr. Tuck not disabled at step five because the ALJ found Mr. Tuck could perform other work existing in significant numbers in the national economy through the date last insured, September 30, 2012.  (Tr. 21–22.)

      Based on the Court's careful consideration of the record, the parties' memoranda, the oral arguments, and relevant legal authorities, the Court AFFIRMS the Commissioner's Decision. The Court finds substantial evidence supports the ALJ's analysis of Mr. Tuck's literacy and credibility.  Substantial evidence also supports the ALJ's residual functional capacity (RFC) assessment and the ALJ's analysis of the grid rules at step five.

**Procedural History**

On May 26, 2009, Mr. Tuck protectively filed an application for disability insurance benefits alleging disability beginning March 30, 2009.  (Tr. 297–98.)  Mr. Tuck claimed disability due to a combination of impairments including borderline intellectual functioning and hiatal hernia.  (Pl.'s Opening Br. 3, ECF No. 17.)  The Social Security Administration denied Mr. Tuck's claim initially and on reconsideration.  (Tr. 112–15, 121–23.)  An ALJ conducted a hearing on November 28, 2011, (tr. 29–63), and issued a decision finding Mr. Tuck not disabled within the meaning of the Act, (tr. 88–106).

The Appeals Council granted Mr. Tuck's request for review of the ALJ's decision and remanded the case to the ALJ for further proceedings.  (Tr. 107–10.)  Pertinently, the Appeals Council ordered the ALJ to clarify Mr. Tuck's ability to read and write and to specify how many pounds Mr. Tuck could lift.  (Tr. 108–09.)  On October 4, 2013, the ALJ held a supplemental hearing, (tr. 64–85), and, on January 27, 2014, the ALJ again found Mr. Tuck did not qualify as disabled within the meaning of the Act.  (Tr. 8–28.)  The Appeals Council denied Mr. Tuck's second request for review, (tr. 1–4), making the ALJ's January 2014 decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g).  See 20 C.F.R. § 404.981.

**STANDARD OF REVIEW**

The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards.  42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g). Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted). Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted).

In addition to a lack of substantial evidence, the Court may reverse where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

The ALJ evaluated Mr. Tuck's claim through step five, concluding Mr. Tuck did not qualify as disabled. (Tr. 11–23.) The ALJ found Mr. Tuck could perform the job of dowel

3

inspector, a job that exists in significant numbers in the national economy, considering his RFC, age, education, and work experience. (Tr. 21–22.)

During oral arguments on appeal, Mr. Tuck's counsel clarified Mr. Tuck's arguments in support of his claim that this Court should reverse the Commissioner's decision. First, Mr. Tuck argues that the ALJ failed to evaluate Mr. Tuck's functional illiteracy properly. (Pl.'s Opening Br. 10, ECF No. 17.) Second, Mr. Tuck asserts the ALJ failed to include the moderate and marked mental limitations Dr. Wallis found in the ALJ's RFC assessment. (*Id.* at 11.) Though Mr. Tuck originally characterized these arguments as challenges to the ALJ's step five analysis, (*see id.* at 9), he acknowledged during the hearing that these arguments more properly represent challenges to the ALJ's RFC finding. Additionally, Mr. Tuck claims the ALJ improperly discounted his subjective complaints. (*Id.* at 13–15.) Mr. Tuck also challenges the ALJ's application of the grid rules at step five. (*Id.* at 12.) The Court addresses each argument in turn.

### I. Challenges to the ALJ's RFC Assessment.

#### A. *Mr. Tuck's Functional Illiteracy.*

Mr. Tuck asserts the ALJ failed to consider properly his combined reading, writing, and vocabulary score, which fell at the third grade level. (Pl.'s Opening Br. 10–11, ECF No. 17.) Mr. Tuck also argues the ALJ failed to account for the limitation given by Ms. Bird, Director at the Bridgeland Literacy Center, that Mr. Tuck's "current reading level would prohibit Mr. Tuck from applying for or obtaining most jobs," as employees typically need a minimum of an eighth grade reading level. (*Id.* at 11; tr. 502.) The Commissioner responds that the ALJ reasonably interpreted the record evidence and that the ALJ properly considered Ms. Bird's opinion. (Def.'s

Ans. Br. 10–11, 16–17, ECF No. 28.)  Because substantial evidence supports the ALJ's findings, the Court finds no error in the ALJ's analysis of Mr. Tuck's literacy.

In determining a claimant's literacy, "[t]he regulations only require the ability to read and write simple messages." *Ross v. Chater*, 930 F. Supp. 1452, 1455 (D. Kan. 1996); *see* 20 C.F.R. § 404.1564(b)(1) ("Illiteracy means the inability to read or write.  We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name.  Generally, an illiterate person has had little or no formal schooling.").  The ALJ found Mr. Tuck could perform some simple jobs that "do not require reading, arithmetic/math or writing." (Tr. 18.)  The ALJ noted that while Mr. Tuck "has some deficits in his ability to read and write, [Mr. Tuck] is not illiterate." (*Id.*)  The ALJ concluded that testing from 2010 showed Mr. Tuck reads at a fourth grade level, (*see* tr. 17–18, 353), a conclusion "consistent with [Mr. Tuck's] testimony that he can read a newspaper, understand simple words and sign his name." (Tr. 18–19.)  The Regulations consider a person with some formal schooling and some language skills at a sixth grade level or less to have a marginal education and not qualify as illiterate.  20 C.F.R. § 404.1564(b)(2).  The ALJ found Mr. Tuck had a marginal education.  (Tr. 21.)  Substantial evidence supports the ALJ's determination that Mr. Tuck's low reading, writing, and math levels – whether assessed at a third or fourth grade level – would not preclude him from performing some jobs existing in the national economy.

The ALJ also explicitly considered Ms. Bird's opinion that Mr. Tuck's physical limitations combined with his low reading level precluded most employment, and the ALJ incorporated Mr. Tuck's reading and related limitations in the RFC.  (*See* tr. 20, 502.)

Importantly, Ms. Bird opines: "The standard reading level needed for jobs, *other than manual labor*, is a minimum of 8th grade." (Tr. 502 (emphasis added).) A developmental center director, such as Ms. Bird, constitutes a non-medical source. *See* 20 C.F.R. § 404.1513(a); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Thus, the ALJ must provide "good reasons" for the weight he assigns to Ms. Bird's opinion, so that the decision "make[s] clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (2003)); *see Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012) (unpublished) ("[T]he adjudicator generally should explain the weight given to the opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or reviewer to follow the adjudicator's reasoning . . . ." (quoting SSR 06-03p, 2006 WL 2329939, at *6)).

     The ALJ gave "little weight" to Ms. Bird's opinion regarding Mr. Tuck's "physical ability to work, and his overall ability to find employment" because Ms. Bird lacks medical or vocational expertise, and her opinion conflicts with the evidence. (Tr. 20.) Moreover, the ALJ noted that Mr. Tuck's long work history belies Ms. Bird's assertion that Mr. Tuck's low reading and writing abilities would preclude most work. (Tr. 17.) The medical experts the ALJ relies on find Mr. Tuck can perform some physical labor. (Tr. 20, 564, 569.) While the Court acknowledges Mr. Tuck's contention that his physical lifting limitation excluded prior or other work that does not require reading, (Pl.'s Reply 5, ECF No. 29), the vocational expert testified that someone with Mr. Tuck's lifting limitations (light/sedentary work) and reading limitations can find jobs in the national economy. (Tr. 22, 50, 60.) Hence, those with the expertise opined

differently than Ms. Bird.  Thus, substantial evidence supports the ALJ's discounting of Ms. Bird's opinion.

In sum, the Court concludes that substantial evidence supports the ALJ's finding that Mr. Tuck has a marginal education.

> B. *The ALJ's Evaluation of Dr. Wallis's Medical Opinion.*

Next, Mr. Tuck asserts that the ALJ erred by failing to include in the RFC finding the moderate and marked limitations identified in Dr. Wallis's August 2010 Mental Residual Functional Capacity Assessment.  (Pl.'s Opening Br. 11, ECF No. 17.)  Mr. Tuck argues that the vocational expert's (VE) testimony established that Dr. Wallis's additional limitations, if included in the RFC, would have eliminated all work.  (*Id.*; Pl.'s Reply 3, ECF No. 29; tr. 59–60.)  The Commissioner rejoins by noting that the Tenth Circuit rejected this exact argument in *Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013) (unpublished).  (Def.'s Ans. Br. 13–16, ECF No. 28.)  The Commissioner also cited *Carver v. Colvin*, 600 F. App'x 616 (10th Cir. 2015) (unpublished), during the hearing for the same proposition.  The Court finds no error in the ALJ's evaluation of Dr. Wallis's opinion.

An ALJ must evaluate every medical opinion.  20 C.F.R. § 404.1527(c).  When considering medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and inconsistencies.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (reflecting the ALJ's duty to resolve conflicting medical evidence).

Dr. Wallis, a nonexamining state agency physician, conducted a review of Mr. Tuck's records.  Dr. Wallis included his findings in a Mental RFC Assessment, Form SSA-4734-F4-SUP, and a Mental Summary.  (*See* tr. 534–37, 570–71.)  The ALJ gave Dr. Wallis's opinion

great weight finding Dr. Wallis's opinion well supported by and consistent with the medical record and that Dr. Wallis has familiarity with agency standards. (Tr. 20.) Substantial evidence supports these findings. Dr. Allen's opinion that Mr. Tuck could perform simple two-step job instructions, (tr. 19–20, 514), coincides with Dr. Wallis's conclusion that Mr. Tuck can only perform "simple/unskilled or semi-skilled employment," (tr. 20, 571).

In Section I ("Summary Conclusions") of the Mental RFC Assessment, Dr. Wallis noted moderate limitations in Mr. Tuck's ability to remember locations and work-like procedures; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; set realistic goals or make plans independently of others. (Tr. 534–35.) Dr. Wallis also noted marked limitations in Mr. Tuck's ability to understand, remember, and carry out detailed instructions. (Tr. 534.) Mr. Tuck asserts that even one of these limitations, if included in the RFC, would have excluded all remaining work. (Pl.'s Opening Br. 11, ECF No. 17.)

The Tenth Circuit and courts in this District have clearly held that an ALJ need not specifically rely on the limitations in Section I of the Mental RFC form where the ultimate RFC finding addresses the doctor's conclusions in Section III. As the Tenth Circuit explained in *Sullivan*, the Mental RFC form has several sections. Section I, where Dr. Wallis expresses his opinion regarding Mr. Tuck's moderate and marked limitations, "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation

and does not constitute the RFC assessment." *Sullivan*, 519 F. App'x at 989 (quoting Soc. Sec. Admin., *Program Operations Manual System* (POMS) § DI 24510.060, *available at* https://secure.ssa.gov/poms.nsf/lnx/0424510060).  The doctor sets forth the actual mental RFC assessment in Section III, explaining how the notations in Section I manifest themselves in the work place.  *Id.*  Thus, "the opinions in Section III are a distillation of the summary opinions in Section I."  *Gale v. Colvin*, No. 2:12-cv-00677-BSJ, 2013 WL 1868123, at *4 (D. Utah May 3, 2013) (unpublished); *see also Anderton v. Colvin*, No. 2:11-cv-00894-DN-DBP, 2013 WL 1284350, at *8–9 (D. Utah Mar. 4, 2013) (unpublished), *report and recommendation adopted*, 2013 WL 1282033 (D. Utah Mar. 27, 2013) (unpublished).

Nonetheless, the ALJ may not "turn a blind eye to" the limitations identified in Section I; the agency consultant's Section III narrative must "adequately encapsulate[]" the Section I limitations, and the ALJ must "sufficiently capture[] the essence of the Section III functional limitations" in the RFC finding.  *Carver,* 600 F. App'x at 619–20.

Here, Dr. Wallis's Section III narrative adequately elaborates on the functional limitations he identified generally in Section I.  (*Compare* tr. 534–36 *with* tr. 570–71.)  In Section III (the "Functional Capacity Assessment"), Dr. Wallis refers to the Mental Summary. (*See* tr. 536, 570–71.)  In the Mental Summary, Dr. Wallis summarizes the evidence on record and concludes that "[p]rior to the onset of physical limitations, [Mr. Tuck] evidently worked [Substantial Gainful Activity ("SGA")] consistently – obviously [Mr. Tuck] is more adept with non-verbal/non-intellectual tasks; [Mr. Tuck] has both specific learning disability and borderline intellectual functioning thus not simply non-clinical illiteracy; [Mr. Tuck's] functioning limits him to simple/unskilled or semi-skilled employment."  (Tr. 571.)  In drawing this conclusion, Dr.

Wallis explains how the limitations in Section I apply to Mr. Tuck's employment and limits him to simple/unskilled or semi-skilled work.

By acknowledging that the main difference in Mr. Tuck's employability comes from his physical limitations, Dr. Wallis imposes mental limitations consistent with past work. (*See* tr. 571.) The ALJ's RFC finding sufficiently accounts for Dr. Wallis's Section III conclusions, and, in fact, restricts the work available to Mr. Tuck more than Dr. Wallis's opinion does. The ALJ found that Mr. Tuck could perform the full range of light to sedentary unskilled work, except such work could not require:

- **Working at more than a low stress level, which means: a low production level (where VE classified SGA jobs as low, average, or high production);**
- **Working at more than a low concentration level, which means the ability to be alert and attentive to (and to adequately perform) only unskilled work tasks;**
- **Working at more than a low memory level, which means:**
    - **The ability to understand, remember, and carry out "simple" work instructions ("simple" being defined as functioning at GED levels of only – Reasoning: 2, Math: 1 (in this regard, [Mr. Tuck] can perform essentially no arithmetic or math in his head), and Language: 1 (in this regard, [Mr. Tuck] can perform essentially no writing or reading work duties));**
    - **The ability to remember and deal with only minimal changes in the work instructions from week to week; and**
    - **The ability to remember and use appropriate judgment in making only simple work-related decisions.**

(Tr. 15.) These findings meet or exceed Dr. Wallis's Section III findings that Mr. Tuck can do simple unskilled or semi-skilled work. Thus, the Court finds the ALJ incorporates Dr. Wallis's Section I opinions into the RFC finding.

Regarding Mr. Tuck's assertion that the VE testified any of the Section I restrictions would eliminate all jobs, the VE eliminated all work after Mr. Tuck's attorney defined "moderate

10

limitations" as not able to do a job satisfactorily. (Tr. 57–59.) As the VE noted, "then by definition, yes, that would eliminate those jobs." (Tr. 59.) That definition, however, does not equate with the definitions used by Dr. Wallis in completing the form. The SSA's instructions for completing the form define "moderately limited" as the "capacity to perform the activity is impaired." POMS § DI 24510.063(B)(2). It goes on to state "[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III." *Id.* Thus, the definition given by Mr. Tuck's attorney to the VE differs from Dr. Wallis's definition, making the VE testimony on the point not probative of any "prejudice" from the alleged failure to include these limitations in the RFC.

As to the "markedly limited" classifications, Dr. Wallis gave that designation to the ability to understand, remember, and carry out detailed instructions. (Tr. 534.) The SSA instructions define "markedly limited" as "cannot usefully perform or sustain the activity." POMS § DI 24510.063(B)(3). Notably, the ALJ's RFC provides for work requiring no more than the ability to understand, remember, and carry out simple instructions. (Tr. 15.) Thus, the RFC does not require working with detailed instructions; so no prejudice arises here either.

Therefore, the Court finds no error in the ALJ's analysis of Dr. Wallis's opinion and, alternatively, finds any error harmless because even if Dr. Wallis did not account for all of the Section I limitations, the ALJ's RFC does by requiring low stress, low concentration, and low memory work.

### C. Mr. Tuck's Subjective Complaints.

Mr. Tuck also argues the ALJ did not properly evaluate his credibility. (Pl.'s Opening Br. 13–15, ECF No. 17.) The Court finds no error in the ALJ's credibility analysis.

"Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's assertions of severe pain and decide the extent to which the ALJ believes the claimant's assertions. *Id.* To make this analysis, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* (citation and internal quotation marks omitted). But this analysis "does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ found Mr. Tuck "not fully credible" and noted that Mr. Tuck's "allegations are somewhat out-of-proportion to the medical findings, and generally not compatible or reasonably consistent with the medical evidence of record and all other evidence – and therefore not fully persuasive." (Tr. 19, 18.) The ALJ provided many reasons for making this finding, including that Mr. Tuck successfully managed his hernias through surgery and that the record lacked supporting medical documentation of disabling physical limitations. (Tr. 18.)

12

The ALJ noted "very few if any significant medical records relat[e] to [hernia] impairment since 2009, with no indication that [Mr. Tuck] experiences any kind of ongoing symptoms related to his hernias beyond 12 months after these problems began." (*Id.*)

While Mr. Tuck suggests the record contains evidence that Mr. Tuck continued to seek treatment from 2009 through 2011, longer than the requisite twelve month period for disability, (Pl.'s Reply 5, ECF No. 29), the record merely establishes distinct and successful hernia repairs in 2009 and 2011. (*See* tr. 17, 358–63, 501, 539–49, 572–79.) No records detail lasting symptoms or limitations beyond the lifetime twenty-pound lifting limitation. (*Id.*) The ALJ acknowledges Mr. Tuck "has had several hernias, but they have been surgically repaired with good results over time." (Tr. 18.) Therefore, the ALJ provided substantial evidence to support his discounting Mr. Tuck's testimony as to totally disabling physical limitations during the relevant disability period. The ALJ accounted for Mr. Tuck's twenty-pound lifting limitation by restricting him to light to sedentary work. (Tr. 15; 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time . . . ."); 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time . . . .").)

Mr. Tuck asserts the ALJ improperly discredited his testimony by claiming Mr. Tuck alleged complete illiteracy when he only contended "he could not read well, and needed verbal instructions." (Pl.'s Opening Br. 14–15, ECF No. 17.) The ALJ's RFC finding accounts for the functional limitations established by the evidence of mental impairment on record, hence acknowledging the difficulties Mr. Tuck has reading. (*See* tr. 15, 17–18.) Thus, while the ALJ discounts Mr. Tuck's credibility, he nonetheless credits the portion of Mr. Tuck's testimony that correlates with the other record evidence to develop the RFC. (Tr. 15–19.) Even if the ALJ fully

13

credited Mr. Tuck's claims of reading difficulties, the RFC would not change as it prohibits jobs that require reading or writing. (Tr. 15.)

In explaining his credibility finding, the ALJ noted "there is no evidence that [Mr. Tuck's] mental limitations would completely prohibit him from performing some jobs that are simple and do not require reading, arithmetic/math or writing." (Tr. 18.) As discussed above, the ALJ reasonably relied on the most recent reading tests that indicated Mr. Tuck could read at a fourth grade level and found that evidence consistent with Mr. Tuck's own testimony that he could read a newspaper, understand simple words, and sign his name. (Tr. 18–19; *see* tr. 353 (Aug. 2010 testing showed Mr. Tuck could read at the 4.5 grade equivalent level), 77–79 (Mr. Tuck's testimony)). That evidence belies Mr. Tuck's claims of more severe difficulties reading, including not being able to write or read a grocery list. (*See* tr. 71, 75–79.) The Court finds substantial evidence supports the ALJ's credibility findings on Mr. Tuck's mental limitations.

In sum, the Court finds substantial evidence supports the ALJ's evaluation of Mr. Tuck's overall credibility.

II. **Challenges to the ALJ's Analysis of the Grid Rules at Step Five.**

Mr. Tuck contends that grid Rule 201.02 dictates a finding of disability because Mr. Tuck approaches advanced age, and the job that the ALJ ultimately found Mr. Tuck could perform constituted an unskilled sedentary position. (Pl.'s Opening Br. 12, ECF No. 17.)

The claimant bears the initial burden of establishing disability in the first four steps of the disability analysis. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show by substantial evidence that the claimant retains the ability to

perform other work existing in the national economy. *Id.* The medical-vocational guidelines ("grids") provide "rules that identify whether jobs requiring specific combinations of the four factors identified by Congress—RFC, age, education, and work experience—exist in the national economy," obviating the need for VE testimony. *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1988). "Automatic application of the grids is appropriate only when a claimant's RFC, age, work experience, and education precisely match a grid category." *Id.* Yet while the RFC "primarily measures a claimant's exertional capacity," a claimant may also have non-exertional impairments that affect the claimant's ability to work. *Id.* Where non-exertional impairments exist, "an ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Accordingly, drawing a distinction between non-exertional and exertional is important. The regulatory framework measures exertion "in terms of the strength requirements for such physical activities as walking, standing, lifting, carrying, pushing, pulling, reaching, and handling." *Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988); *cf.* 20 C.F.R. § 404.1545(b) (2012). Whereas a non-exertional impairment "is present whether or not a claimant is exerting himself or herself in activities that relate to the strength requirements of the grid's RFC ranges," such as relaxing or lying down. *Huston*, 838 F.2d at 1131.

Mr. Tuck asks the Court to apply grid Rule 201.02 and mandate a finding of disability because the only job the ALJ found Mr. Tuck could perform was a sedentary, unskilled position (that of a dowel inspector). (Pl.'s Opening Br. 12, ECF No. 17; tr. 22.) Grid Rule 201.02 applies

to individuals of "advanced age," *i.e.*, age fifty-five or older. *See* 20 C.F.R. § 404.1563(e) (defining "advanced age" to include individuals age fifty-five and over); 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 201.00(f) (same). As a forty-nine year-old at the alleged onset of disability, Mr. Tuck belonged to the "younger person" age category. *See* 20 C.F.R. § 404.1563(c) (defining "younger person" to include individuals under age fifty); 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 201.00(h)(1) (noting "younger individuals" refers to eighteen to forty-nine year olds but acknowledging without naming a subgroup from age forty-five to forty-nine). Because Mr. Tuck does not fall in the advanced age category, and nothing in the record suggests Mr. Tuck's physical capabilities have advanced more than his chronological age would suggest, Rule 201.02 does not apply.

Due to his functional illiteracy and categorization as a younger individual, Mr. Tuck also argues that grid Rule 201.17 applies here. (Pl.'s Opening Br. 12–13 n.1, ECF No. 17.) However, Rule 201.17 contemplates a claimant who can only perform sedentary unskilled work and who cannot communicate in English or qualifies as illiterate. 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 201.17. First, the ALJ did not limit Mr. Tuck to only sedentary work. The ALJ found Mr. Tuck maintained the RFC to perform a full range of light to sedentary unskilled work, with additional exertional and non-exertional limitations due to Mr. Tuck's lifting restrictions and borderline mental functioning. (Tr. 15.) Furthermore, the ALJ found Mr. Tuck has a marginal education and can communicate in English. (Tr. 21.) The ALJ explicitly found Mr. Tuck literate, stating:

> While [Mr. Tuck] has some deficits in his ability to read and write, he is not illiterate. The most recent reading tests indicate that he reads at a fourth grade level, which is consistent with [Mr. Tuck's] testimony that he can read a newspaper, understand simple words and sign his name.

(Tr. 18–19 (internal citation omitted).)  Therefore, Rule 201.17 does not apply.

At his date last insured, Mr. Tuck had turned 52 years old; thus, Mr. Tuck also qualifies as an individual approaching advanced age for much of the period under consideration.  (Tr. 21; *see* 20 C.F.R. § 404.1563(d) (defining "closely approaching advanced age" to include individuals between fifty and fifty-four); 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 201.00(g) (same).)  Mr. Tuck cites *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995), for the proposition that a claimant approaching advanced age qualifies for a finding of disability when the ALJ only identifies sedentary, unskilled work.  (Pl.'s Opening Br. 12, ECF No. 17.)  *Distasio* differs from Mr. Tuck's case.  The court in *Distasio* found the Commissioner "failed to produce evidence that any job categorized as light work was available to Distasio."  47 F.3d at 350.  In contrast, Mr. Tuck testified that he could perform the jobs of dowel inspector, a sedentary job, and medical assembler, a light job.  (Tr. 22, 50, 52, 82.)  Moreover, the VE testified that a person with Mr. Tuck's RFC, age, education, and work experience could perform both these jobs and the job of leaf tier (sedentary), ampule sealer (sedentary), and driver (light).  (*See* tr. 46–52, 60.)  Thus, the VE identified two light jobs Mr. Tuck could perform – medical assembler and driver.  (*See* tr. 49, 51–53.)  While the ALJ did not select these light jobs in the step five analysis, the Commissioner has produced record evidence to support the ALJ's finding that Mr. Tuck can perform light work.  (Tr. 46–52, 60, 82; Def.'s Answer Br. 21, ECF No. 28.)

The Court also notes *Distasio* comes from the Ninth Circuit and does not bind this Court.  While one unpublished Tenth Circuit case agrees with *Distasio*, *Paschall v. Chater*, 94 F.3d 656 (Table Decision), 1996 WL 477575, *2 (10th Cir. Aug. 23, 1996) (unpublished), a District of Colorado opinion makes a compelling argument for finding *Distasio* in error.  *Carrithers v.*

*Astrue*, No. 10-cv-03053-CMA, 2011 WL 5984721, at *3–4 (D. Colo. Nov. 30, 2011) (unpublished). *Carrithers* rejects the position that the ALJ *must* find a claimant with a light RFC disabled under the grid rules if the VE only identifies sedentary jobs. *Id. Hergenreder v. Colvin*, No. 14-1007-EFM, 2015 WL 5604272, at *6 (D. Kan. Sept. 23, 2015) (unpublished), concurs, noting the VE's testimony at step five does not alter the ALJ's RFC determination between steps three and four. Specifically, the VE considers the RFC in addition to the claimant's age, education, and work experience, making the determination separate and distinct from the RFC assessment. *Id.* Further, one panel of the Sixth Circuit found that *Distasio* misreads the Social Security Regulations. *Anderson v. Comm'r,* 406 F. App'x 32, 36 (6th Cir. 2010) (unpublished).

This Court agrees and notes once a vocational expert finds sufficient jobs exist in the national economy that the claimant can do, and the ALJ adopts that testimony, the VE testimony provides better evidence to support the ALJ's decision than a grid rule not specifically tailored to the individual claimant. *See, e.g.*, SSR 83-14 (Jan. 1, 1983), 1983 WL 31254, *4, 6 (explaining that a VE has specialized knowledge to help individualize the available jobs determination not possible with the grids alone). Thus, circling back to apply a grid rule after receiving VE testimony finding existing jobs makes little sense.

The Commissioner suggests that grid Rule 201.10 could also have relevance given Mr. Tuck's age prior to his last insured date. (Def.'s Answer Br. 21 n.9, ECF No. 28.) Grid Rule 201.10 dictates a finding of disability for individuals approaching advanced age who have a "limited or less" education and can only perform sedentary work. 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 201.10. However, as discussed above, the ALJ did not limit Mr. Tuck to sedentary work. (Tr. 15.) Thus, Rule 201.10 does not apply.

Mr. Tuck's RFC, age, work experience, and education do not precisely match a grid rule. Therefore, the ALJ correctly found automatic application of the grid rules inappropriate. (*See* tr. 21–22; *Gossett*, 862 F.2d at 806.) In light of Mr. Tuck's additional non-exertional limitations, the ALJ sought VE testimony to determine if jobs remained in the national economy that Mr. Tuck could perform. (Tr. 21–22.) The VE's testimony makes clear that at least one job exists in sufficient numbers in the national economy that Mr. Tuck can perform, including reductions for Mr. Tuck's non-exertional limitations. (*Id.*; tr. 60.) Where non-exertional limitations significantly limit the claimant's performance of the full range of work in a particular RFC category, the grid rules do not apply conclusively. *Williams v. Bowen*, 844 F.2d 748, 752 (10th Cir. 1988). Such is the case here, as observed by the VE's reduction in the number of jobs available. (Tr. 22, 46–52, 60.) Thus, the Court finds no error in the ALJ's step five analysis.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision.

DATED this 28th day of March, 2016.

                                                  BY THE COURT:

                                                  EVELYN J. FURSE
                                                  United States Magistrate Judge